UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-03451-TWP-MJD |
| | ) | |
| LVNV FUNDING, LLC, and | ) | |
| RESURGENT CAPITAL SERVICES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Plaintiff Kevin Woods ("Woods") (Filing No. 68), and a Cross-Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, L.P. ("Resurgent") (collectively, "Defendants") (Filing No. 73).  Woods initiated this action against Defendants under the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practice Act ("FDCPA"), alleging that they purportedly "continued to disseminate inaccurate statements and information despite [Woods] informing LVNV [ ] that he does not owe the debt that Defendants are reporting." (Filing No. 29 at 5, 9–11.)  Following discovery, Woods moved and Defendants cross-moved for summary judgment.  For the following reasons, the Court **denies** Woods' Motion for Summary Judgment (Filing No. 68) and **grants** Defendants' Cross-Motion for Summary Judgment (Filing No. 73).

## I.    BACKGROUND

In March 2018, a Citibank, N.A. American Airlines credit card account was opened in Woods' name (the "Account") (Filing No. 74-4 at 6).  Shortly thereafter, a one-way airline ticket

from Dallas, Texas to Los Angeles, California was purchased using the Account ([Filing No. 74-1 at 25](#)).  In December 2018, LVNV purchased the now-delinquent Account, and it was placed with Resurgent for collection since no payments had been made on it.  *Id.* at 7–8, 10.  Early the next year, on February 21, 2019, Resurgent sent Woods a letter, informing him that he had thirty days to dispute the debt, or Resurgent would assume it was valid.  *Id.* at 68.  That same day, Resurgent also sent Woods an account summary that verified the Account and included borrower and account information.  *Id.* at 70–71.

Woods called Resurgent a week later, on February 28, 2019, to inform them that he disputed the Account ([Filing No. 74-3 at 8](#)).  Resurgent noted the dispute and asked Woods to send in documentation and details that could help resolve the matter.  *Id.*  The next month, on March 13, 2019, Woods sent Resurgent a completed Federal Trade Commission ("FTC") form letter he "pulled off the Internet" titled "Identity Theft Letter to a Debt Collector".  ([Filing No. 74-4 at 7](#); [Filing No. 69-10 at 2](#).)  In his signed, notarized letter, Woods wrote that he was "a victim of identity theft."  ([Filing No. 69-10 at 2](#).)  He included a copy of his driver's license, and referred to an (apparently missing) "identity [t]heft report" for details.  *Id.*  When Resurgent received the letter, the documents concerning Woods—including account statements and documents that assigned the Citibank account to LVNV—were reviewed.  ([Filing No. 74-2 at 9](#).)  As both sets of documents matched Woods' personal information, and Woods' letter lacked any corroborative support for his assertion of fraud, Resurgent sent a letter on April 3, 2019, to Woods informing him that it had verified the Account and enclosed an account summary.  *Id.*; [Filing No. 74-1 at 73](#). Beginning at this time—April 2019—Resurgent started credit reporting the Account but indicated that it was "disputed." ([Filing No. 74-3 at 7](#).)

When Woods called Resurgent to dispute that confirmatory resolution less than a week later on April 9, 2019, Resurgent again reviewed the Account, determining once more that Woods had not provided sufficient support for his claim (Filing No. 74-2 at 10). On May 1, 2019, Resurgent sent Woods a list of five documentary options that would help in any further investigation: (1) a copy of a filed police report about the fraud; (2) a completed and notarized identify theft affidavit; (3) letter(s) from the original creditor or other previous owner of this account supporting the claim; (4) court documents showing that the perpetrator has been prosecuted for using the account; or (5) any other documents supporting the claim (Filing No. 75-2 at 2). Resurgent also provided Woods a blank identity theft affidavit to complete, but he never returned that form. *Id.* at 4–5.

On May 22, and June 1, 2019, Woods received letters from the American Airlines Security Operations department indicating that, following an investigation, it had determined that he was responsible for the Account (Filing No. 74-6 at 2; Filing No. 74-7 at 2). On June 20, 2019, Woods sent a dispute letter to LVNV and the three major credit reporting agencies (Equifax, Experian, and TransUnion) that challenged the Account (Filing No. 74-8 at 2–6). In the letter, Woods wrote that the Account did not belong to him, and he enclosed a police report from the Tipton County Sheriff's Office. *Id.* at 2, 6. In its narrative, the attached police report indicated that Woods had provided the two letters from American Airlines stating that it had determined that Woods was responsible for the Account. *Id.* at 6. When Resurgent received this dispute as an automated credit dispute verification ("ACDV") on June 28, 2019, it again examined the matter, first through its internal ACDV team and then by its disputes team (Filing No. 74-2 at 13). On August 15, 2019, Resurgent informed Woods that their investigations again established that the information provided—including the adverse police report—did not suffice to support Woods' claim of fraud.

*Id.* at 13, 51.  Again, Resurgent encouraged Woods to provide additional documentation that could assist the investigation, but again Woods did not immediately respond to this invitation.  *Id.*

Meanwhile, on July 15, 2019, Woods received a letter from Equifax indicating that an investigation had determined that the disputed information had been verified (Filing No. 74-9 at 2–3).  On August 28, 2019, however, Woods—two weeks after filing this action on August 14, 2019 under the FCRA and FDCPA—received a letter from American Airlines indicating that it had completed another investigation, but this time concluded that he was not responsible for the Account (Filing No. 69-18 at 2).  After receiving this letter in September 2019, Resurgent requested that the three credit reporting agencies delete all Account information (Filing No. 74-2 at 14).  Woods moved for summary judgment on September 3, 2020 (*see* Filing No. 68).  A month later, on October 2, 2020, Defendants cross-moved for summary judgment (*see* Filing No. 73).

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "In much the same way that a court is not required to scour the record in search of evidence to

4

defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

These tenets apply equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

In their respective briefings on summary judgment, the parties argue that they are entitled to judgment as a matter of law. For his part, Woods argues that "Defendants did not conduct a reasonable investigation into [his] dispute as required by the [FCRA]" and that Defendants violated the FDCPA when they "continued to report the alleged debt to [Woods'] credit report after [he]

disputed the debt." (Filing No. 69 at 16, 20.)[1] Defendants, on the other hand, maintain that LVNV is not liable under the FCRA because it is not a "furnisher" and that "Resurgent conducted reasonable investigations into [Woods'] disputes" required by that statute (Filing No. 74 at 10). As for the FDCPA claim, Defendants contend that Woods "has no evidence that the debt sought to be collected arose from a transaction incurred primarily for personal, family or household purposes," the record is "completely devoid" of evidence that "Defendants engaged in any conduct, the natural consequence of which is to harass, oppress, or abuse [Woods]," "Defendants verified the Account and/or requested additional information necessary to investigate his identity theft claim" each time Woods made a dispute, a "dispute letter was deemed insufficient and the police report indicated that he provided two (2) letters from American Airlines confirming he owes the alleged debt," and "the record is completely devoid of any evidence that Defendants' conduct was unfair or unconscionable." (Filing No. 74 at 16, 17, 18, 20, 21.) The Court will examine the claims in turn, first examining those based on the FCRA, then shift to those stemming from the FDCPA.

## A.   **FCRA Claims**

Woods' Amended Complaint alleges that each Defendant "violated § 1681n and § 1681o of the FCRA" by willfully and negligently:

1.    failing to conduct an investigation of the inaccurate information that [Woods] disputed;

---

[1] Woods also argues that Resurgent cannot "replace its previous 30(b)(6) representative, Anne Herthneck, with an alternative corporate representative, Katherine Heatherly" because the Court has "required the parties to seek leave to file their final witness and exhibit lists." (Filing No. 62 at 23–24.) Rule 30(b)(6) of the Federal Rules of Civil Procedure mandates that an organization "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf" when that organization is named in a notice of deposition. In other words, the organization must choose an individual to act as its "voice" when it is deposed. Here, Resurgent's voice left the company, so, under Rule 30(b)(6), it permissibly designated a new corporate representative "to testify on its behalf." *See, e.g., Green Payment Sols., LLC v. First Data Merch. Servs. Corp.*, No. CV 18-1463 DSF (ASX), 2019 WL 4221402, at *1 (C.D. Cal. July 2, 2019) (allowing substitution of corporate representative when former Rule 30(b)(6) witness left Defendant's employ); *Ruzhinskaya v. HealthPort Techs., LLC*, No. 14 CIV. 2921 (PAE), 2016 WL 7388371, at *7 (S.D.N.Y. Dec. 20, 2016) (same); *Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931(WHP), 2014 WL 503959 *11 (S.D.N.Y. Jan. 29, 2014) (same).

2. failing to review all relevant information concerning [Woods'] account provided to [the particular] Defendant;

3. failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

4. failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by [Woods];

5. continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning [Woods] to credit reporting agencies and other entities despite knowing that said information was inaccurate; and

6. failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2.

(Filing No. 29 at 7.) Because the parties primarily quibble over whether LVNV is a "furnisher" under the FCRA and whether Resurgent conducted a "reasonable investigation" as contemplated by that statute, the Court will discuss these contentions in turn.

 **1.** **LVNV as a "furnisher" under § 1281s-2**

 Section 1681s-2, the provision under which Woods brings his FCRA claims, establishes the "[r]esponsibilities of furnishers of information to consumer reporting agencies." As a sister court in this circuit described, "[a] 'furnisher' of credit information is one who provides the actual credit information to a credit reporting agency, generally a creditor, servicer, or collection agency." *Strohbehn v. Access Grp. Inc.*, 292 F. Supp. 3d 819, 829 (E.D. Wis. Nov. 14, 2017). Defendants contend that LVNV is not a "furnisher"—and thus not liable for any claims under § 1681s-2— because it "did not furnish any information to a credit reporting agency." (Filing No. 74 at 10.) Instead, Defendants argue that "Resurgent alone" communicated to the credit reporting agencies. *Id.* And though Woods "argues that LVNV should be held liable under the FCRA because of an

alleged agency relationship between Resurgent and LVNV,"[2] the FCRA neither imposes any responsibilities "beyond the furnisher itself" nor does it "provide for vicarious responsibility." *Id.* at 10–11 (citing *Strohbehn*, 292 F. Supp. 3d at 829).

Woods responds that evidence "undoubtedly" demonstrates LVNV is a furnisher of credit information (Filing No. 75 at 16, 17). First, "the January 14, 2019 collection letter from Halsted Financial . . . reports LVNV [ ] as the 'Current Creditor To Whom The Debt Is Owed'" and "explicitly states, 'Please note that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency *by the current account owner* if you fail to fulfill the terms of your credit obligations.'" *Id.* at 16 (quoting Filing No. 75-11 at 2) (emphasis Woods'). This letter, Woods contends, serves as "concrete evidence that LVNV [ ] is a furnisher of information under the FCRA." *Id.* Moreover, Woods continues, his "Equifax credit report plainly reflects LVNV Funding as the reporting debt collector for the Citibank account." *Id.* (citing Filing No. 75-4 at 3). Finally, Woods contends that a "letter [he] received from Equifax shows that LVNV [ ] was the party who furnished information about the account to Equifax" because it informed him that, if he had "'additional questions,'" he should "'contact Lvnv [sic] Funding LLC.'" (Filing No. 75 at 17 (erroneously citing Filing No. 75-7 at 2)).[3]

Defendants reply that a "letter from a third-party collector" (*i.e.*, Halsted Financial) does not establish that LVNV was a furnisher; rather, it represents "nothing more than uncorroborated

---

[2] In his summary judgment brief, Woods contended that "Defendants are two companies that are so intertwined with one another that there is no question as to whether apparent agency is applicable here." (Filing No. 69 at 15.) But Woods ostensibly abandoned that contention as it relates to this claim because he does not mention agency at all when discussing LVNV's purported role as a furnisher under the FCRA.

[3] Woods mistakenly cites a June 27, 2019, letter as containing this language, while, in actuality, it was included in a July 15, 2019, letter from Equifax. (*Compare* Filing No. 75-7 at 2 (June 27, 2019, letter) ("You may contact the company that reports the information to us and dispute it directly with them."), *with* Filing No. 74-9 at 3 (July 15, 2019, letter) ("If you have additional questions about this item please contact: Lvnv Funding LLC . . . .") (emphasis removed)).

hearsay." (Filing No. 76 at 9–10.)  Besides, "Anne Herthneck, who was a duly authorized representative of LVNV and Resurgent[,] verified that Resurgent alone was actually communicating [Woods'] credit information on the Account to the CRAs".[4]  *Id.* at 10 (citing Filing No. 74-3 at 7).  Indeed, this is why Woods "amended his complaint to include Resurgent as a defendant."  *Id.*  All told, LVNV is not "a furnisher subject to the reinvestigation obligations set forth in the FCRA" because "[t]here is no competent evidence in the record that LVNV provided actual credit information to any CRA."  *Id.*

"[S]ummary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Harney v. Speedway SuperAmerica*, 526 F.3d 1099, 1104 (7th Cir. 2008)).  To avoid summary judgment on this claim as it pertains to LVNV, Woods needed to present evidence that this Defendant "provided the actual credit information to a CRA."  *See Strohbehn*, 292 F. Supp. 3d at 829.  Instead, he has only designated a letter from a third-party debt collector suggesting that LVNV "may" report the unpaid debt "if" he fails to pay it (Filing No. 75-11 at 2), a credit report from Equifax identifying "Lvnvfundg" as the creditor on a past due, open account (Filing No. 75-4 at 3), and a letter from Equifax indicating that he could contact "Lvnv [sic] Funding LLC" if he had "additional questions about" the disputed account (Filing No. 74-9 at 3). Because this evidence does not establish that LVNV *provided* any credit information to a CRA, and instead merely suggests that it was owed the debt, it is entitled to judgment as a matter of law on the FCRA claim.  Because the evidence provided falls well short of drawing LVNV within the ambit of Section 1681s-2, the Court **denies** Woods' Motion for Summary Judgment and **grants**

---

[4] CRA is Defendant's acronym for credit reporting agencies.

Defendants' Cross-Motion for Summary Judgment as it pertains to that claim against this Defendant.

### 2.    **Reasonable Investigation**

Under the FCRA, "after a furnisher . . . receives notice from a CRA that a consumer disputes the 'completeness or accuracy of information' that the furnisher gave the CRA, the furnisher must conduct a reasonable investigation and report the results of the investigation back to the CRA." *Lang v. TCF Nat. Bank*, 249 Fed.Appx 464, 465 (7th Cir. 2007) (quoting *Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005)).    The reasonableness of an investigation depends upon the nature of the dispute that was made to the credit reporting agency. *Lang v. TCF Nat'l Bank*, 338 Fed. Appx. 541, 543–44 (7th Cir. 2009).    "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra*, 409 F.3d at 827.

Woods contends that Resurgent—after it "was notified by Trans Union, Equifax, and Experian that [Woods] disputed the information reported about the Citibank account"—not only "fail[ed] to conduct a reasonable investigation, [but] failed to conduct an investigation at all." (Filing No. 69 at 17–18.)    During its "supposed investigation," Woods notes, Resurgent admittedly

1.    never contacted American Airlines;

2.    never contacted the Tipton County Police Department;

3.    never contacted the credit bureaus;

4.    never contacted [Woods] by phone;

5.    never determined whether the credit card was used for personal use or business use;

6.    never discovered what purchases were made with the Citibank account;

7.    never contacted Citibank;

8.    never discovered that the Citibank account statements were sent to an email address that does not belong to [Woods];

9.    never discovered that the Citibank account statements were mailed to an address that [Woods] had not resided at nor received mail to since March 2013; and

10.   discovered that the account was used to purchase a one-way flight from Dallas, Texas to Los Angeles, California.

*Id.* at 18, 19 (citations omitted). Instead, "Resurgent simply 'looked at' [Woods'] police report and consequently rendered [Woods'] claim insufficient." *Id.* at 18. And though Resurgent contends that it "relied on American Airlines' confirmation that [Woods] owed the account," it never possessed "the letters from American Airlines, so it is seemingly impossible that Resurgent could have relied on them." *Id.* at 19. And in any event, Woods maintains that "Resurgent could not have relied on American Airlines' confirmation that [he] owed the debt because Resurgent never contacted American Airlines to receive such confirmation." *Id.* Finally, even though "Resurgent will argue that [Woods'] FTC report is insufficient because it does not contain the same exact information requested in Resurgent's identity theft affidavit[,] . . . Resurgent never contacted [Woods] to obtain the missing relevant information required on" that affidavit. *Id.* In fact, even though "a victim of identity theft may not know the answer to every question asked in Resurgent's identity theft affidavit, Resurgent rendered [Woods'] identity theft affidavit insufficient". *Id.* at 20.

Defendants argue that "Resurgent conducted reasonable investigations into [Woods'] disputes". (Filing No. 74 at 11.) After Resurgent received Woods' dispute from the credit reporting agencies, it "researched the information provided with the dispute with the information it had received from LVNV and based on that information (the matching of data), Resurgent did not find a mistake and verified the Account was being reported accurately." *Id.* at 12. In fact, the police report provided with the dispute stated that Woods had "produced two (2) letters from American Airlines making a determination that he was responsible for the debt." *Id.* After Equifax informed

Woods that the disputed information had been verified, Resurgent advised him "that the documentation that he provided was insufficient to support his claim that he was a victim of identity theft but continued to invite him to provide additional or supplemental documentation for further investigation." *Id.* This satisfied the "reasonable investigation" requirement. *Id.* at 12–13. In any event, however, Resurgent had previously investigated Woods' disputes, but "[a]ll investigations concluded"—just like the first two completed by American Airlines—"that the information that Resurgent was reporting matched the information in its records and that [Woods'] fraud claim was unsubstantiated." *Id.* at 13. In short, the internet form previously completed by Woods "was insufficient to support his claim that he was a victim of identity theft" when Woods "provided no real facts, only basic contact information and the conclusion that he did not incur the account." *Id.* at 14. And after later attempts at assisting Woods, he, for whatever reason, "did not complete and/or return the Identity Theft Affidavit." *Id.* at 15.  In short, Resurgent conducted a reasonable investigation when it "sent letters to [Woods] informing him that Resurgent investigated the dispute," "reviewed the dispute and verified the information listed in the account," "requested that the account be marked as disputed," and "determined there was no inaccuracy to modify, delete or block." *Id.*

Woods maintains that despite Resurgent claiming that letters sent on May 1, 2019 and August 15, 2019, informed "him that Resurgent investigated the dispute," these letters "do not actually say that" and "do not indicate that [it] took proactive steps to investigate" his claim. (Filing No. 75 at 9.)  Instead, the "letters simply state '[w]e have determined that the information provided is insufficient.'" *Id.* (quoting Filing No. 75-2 at 2; Filing No. 75-5 at 2).  Unlike American Airlines and Equifax (who told him "that they took proactive steps to investigate" his claim), Woods continues, "Resurgent simply told [him] he needed to provide additional documentation." *Id.*  And

unlike in a case where letters from a furnisher stated "[w]e have reviewed the dispute and verified the information listed on the account.  Based on *our investigation* of the dispute, it is our position that the information we are reporting to the consumer reporting agencies regarding the account is accurate," the letters here "simply state that it was [Woods] who did not provide enough information to Resurgent in order for them to reach a conclusion."  *Id.* at 10 (quoting *Chuluunbat v. Cavalry Portfolio Servs.*, LLC, 2020 LEXIS 128931 (N.D. Ill. July 22, 2020)).  Moreover, Defendants' explanation for Resurgent's investigation is "ambiguous" and "vague" when they only explain that "Resurgent's ACDV team reviewed the dispute and forwarded it to Resurgent's disputes team for further investigation" and that "'Resurgent researched the information provided with the dispute with the dispute [sic] with the information it had received from LVNV and based on that information (the matching of data), Resurgent did not find a mistake and verified the Account was being reported properly.'"  *Id.* (citing and quoting Filing No. 74 at 12).  This explanation fails to explain how Resurgent "conducts its research, what data was allegedly matched, or what steps Resurgent takes to locate mistakes within a consumer's account."  *Id.*  And "[h]ad Defendants verified [Woods'] address, they would have noticed that the account statements from American Airlines were not sent to [his] current address."  *Id.* at 12.  All in all, instead of explaining the steps they took to investigative the matter, Woods contends that Defendants "attempt to place the blame on" him by pointing to "additional steps" he should have taken, ignoring that they "did not take any affirmative action to discover: (a) that the Citibank account statements were sent to an email address that does not belong to [Woods] or (b) that the Citibank account statements were mailed to an address that [Woods] had not resided at nor received mail to since March 2013."  *Id.* at 12–13 (citations removed).

Defendants reassert that "Resurgent complied with the FCRA" in its investigation.   (Filing No. 76 at 5.)   Specifically, "Resurgent's ACDV team reviewed the dispute and forwarded it to Resurgent's disputes team for further investigation." *Id*. at 6.   After the police report supplied by Woods stated that he had "provided two letters from American Airlines determining the account and charges belonged to" him, the ACDV team ultimately determined "that the information provided was insufficient to substantiate [Woods'] fraud claim"   *Id.* Defendants argue the Court must consider the entirety of Resurgent's investigation, including that it had already "investigated and responded to a direct dispute from" Woods before receiving the June 2019 dispute.  *Id.* at 6.

Woods referenced an "identity theft report" in his earlier communication, but he failed to attach that document, which led Resurgent to determine that the information Woods provided "was insufficient to substantiate" his fraud claim.  *Id.*   Thereafter, Resurgent "advised" Woods "of several items of information he could provide to" help the investigation.  *Id.*   Defendants argue that Instead of taking up this offer, Woods "did not respond" and "deliberately ignored Resurgent's requests for additional information to further its investigation." *Id.* at 6–7.

Relying on *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994 (N.D. Ill. August 21, 2009), Woods argues the Defendants "should have figured out that the Citibank statements were being sent to an email address that did not belong to [him] and that the Citibank statements were also addressed to a residence that [he] had not resided at since March 2013" because a court had determined that a similar investigation was "reasonable and conducted properly*". Id*, at 7. However, *Shames-Yeakel* actually involved an *expert* making the determination about "an investigation to determine the identity of [a] person who [fraudulently] initiated the cash advance." *Id.* at 7 (citing)). While the court in that case ultimately held that the defendant "'violated the FCRA by reporting a debt arising from a theft but failing to note the disputed nature of that debt,'" *id.* at

8 (quoting *Shames-Yeakel*, 677 F. Supp. 2d at 1005)), "each time Resurgent reported [Woods'] account to the CRAs, it included a remark that the account information is disputed by the consumer". *Id.*

The Court agrees with Defendants that the reasonableness of Resurgent's procedures is "beyond question." *Crabill*, 259 F.3d at 664.  To recover against a furnisher—like Resurgent—for a violation of § 1681s-2(b), a consumer must notify the CRA that he disputes the information provided by the furnisher to the CRA.  *See* 15 U.S.C. § 1681s-2. But even before Woods notified any CRA about the disputed Account, Resurgent closely examined the claim.  After it first received notice of the fraudulent activity when Woods called the company to inform it that he disputed the account, Resurgent immediately noted the dispute and asked Woods to send in records that could help resolve the matter (Filing No. 74-3 at 8).  When Woods sent Resurgent the "Identity Theft Letter to a Debt Collector" missing the "attached" "identity [t]heft report" (Filing No. 69-10 at 2), Resurgent reviewed the Account (Filing No. 74-2 at 9).  After nothing corroborated Woods' assertion of fraudulent activity, Resurgent again informed him that it had verified the Account. *Id.*; Filing No. 74-1 at 73.  When Woods disputed the Account, Resurgent again investigated and, after determining that Woods had not provided sufficient support for his claim (Filing No. 74-2 at 10), invited him to provide five specific types of documents that could help resolve the matter (Filing No. 75-2 at 2); Resurgent even provided Woods a blank identity theft affidavit to complete, *id.* at 4–5.

After Resurgent received the dispute sent to the CRAs as an ACDV its statutory duty to investigate was triggered; *see Gulley v. Pierce & Assocs., P.C.*, 436 F. App'x 662, 664 (7th Cir. 2011) (noting that "the statutory duty under the FCRA to investigate a disputed debt . . . may be triggered only by a formal notice of dispute from a credit reporting agency"). (Filing No. 74-2 at

13). Thereafter Resurgent again examined the matter, first through its internal ACDV team and then by its disputes team. *Id.* Following these investigations, Resurgent again informed Woods that the information provided, including the police report indicating that American Airlines had itself determined that Woods made the disputed charge, did not suffice to support his claim of fraud.  *Id.* at 13, 51.   Once more, Resurgent encouraged Woods to provide additional documentation that could assist the investigation. *Id.* Finally, after receiving a letter from American Airlines stating that it had determined that Woods was not responsible for the Account, Resurgent immediately requested deletion of the account information to the CRAs.  *Id.* at 14.

After verifying his account details on several occasions, Resurgent invited Woods to supplement his report of fraud, and, time and again, Woods failed to give Resurgent information that corroborated his claim.  *See Westra*, 409 F.3d at 827 (holding that investigation was reasonable beyond question when furnisher verified consumer's name, address and date of birth after receiving an ACDV from a CRA with a dispute code indicating that the consumer was disputing the charge on the basis that the account did not belong to him); *Tillman v. Navient Sols., LLC*, No. 18-CV-04625, 2020 WL 3250799, at *5 (N.D. Ill. June 15, 2020) (holding that a complaint did not plausibly allege that a furnisher failed to investigate claims in a reasonable fashion when it "investigated the plaintiff's claims on at least two occasions and communicated the results of those investigations directly to the plaintiff"). While Woods contends that he satisfied Resurgent's request for additional information by providing one of the documents it said could help the investigation, the police report actually hurt his case: it indicated that American Airlines had determined he was responsible for the Account.  *See Zahran v. Bank of Am.*, No. 15 C 1968, 2016 WL 826402, at *4 (N.D. Ill. Mar. 3, 2016) ("Any claim that defendant failed to perform a reasonable investigation is, at best, fatally conclusory, as plaintiffs provide no facts to support any

conclusion that defendant's investigation was unreasonable. At worst, plaintiffs' claim is *contradicted by their own allegations*.") (emphasis added) (citation omitted).

By verifying Woods' account details and inviting him to provide additional information to investigate the claim Resurgent satisfied its obligation to conduct a reasonable investigation under the FCRA. *See Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) (Barrett, J.) (holding that a furnisher's "investigation was unquestionably reasonable" when a CRA's report to it "stated solely that [the plaintiff] claimed the account did not belong to her" and the furnisher verified the plaintiff's "personal information with her [ ] file on record"); *cf. Westra*, 409 F.3d at 827 (suggesting that "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA").

Because Woods has alleged nothing to suggest that the multiple investigations (conducted both before and after Woods challenged his responsibility for the Account to the CRAs) were unreasonable, and, if anything, has provided evidence to the contrary, his FCRA claims against Resurgent fail as a matter of law. The Court **denies** Woods' Motion for Summary Judgment and **grants** Defendants' Cross-Motion for Summary Judgment as it pertains to this claim.

**B.   FDCPA Claims**

In his Amended Complaint, Woods alleges that each Defendant violated various provisions of the FDCPA by:

1.   engaging in conduct the natural consequences of which is to harass, oppress, and abuse Plaintiff in connection with the collection of an alleged debt, when Defendant continued to report the alleged debt to Plaintiff's credit report after Plaintiff disputed the alleged debt (violating § 1692d);

2.   using false representations or deceptive means to collect or attempt to collect any debt, when Defendant disregarded Plaintiff's dispute of the alleged debt and continued to deceptively perpetuate the false representation that Plaintiff owes it a debt (violating § 1692e(10));

3.      continuing to assume the validity of the alleged debt, when Plaintiff disputed the validity of the debt in writing and after being notified by Defendant Equifax of the Plaintiff's dispute which they received from Plaintiff (violating § 1692g(a)(3)); and

4.      using unfair or unconscionable means to collect or attempt to collect any debt, when Defendant engaged in each of the foregoing violations (violating § 1692f).

(Filing No. 29 at 9, 10–11).

To state a claim under the FDCPA, a plaintiff "must demonstrate that the debt in question arises out of a transaction incurred for personal, family, or household purposes." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citing 15 U.S.C. § 1692a(5)). Defendants argue that Woods has not met his burden to prove this element because "[t]he record is absent of any evidence to establish that the debt sought to be collected arose from" a consumer transaction. (Filing No. 74 at 16.)  They contend the only evidence about the provenance of the debt is an "American Airlines credit card statement which shows a charge for an airline ticket from Dallas, Texas to Los Angeles, California."  *Id.*  Though Woods argues that he does not know who made the purchase, Defendants contend that he fails to establish that it was made "for personal, family or household purposes."  *Id*.  Woods responds that this "unsupported conclusion" is "without merit" because he can use "'[e]vidence of the types of purchases made'" to demonstrate the consumer-nature of the debt (Filing No. 75 at 14 (citing *Burton*, 934 F.3d at 584)).  As for that evidence, Woods argues "the Citibank account was used to purchase a singular one-way American Airlines flight," "was issued to an individual, under the false pretenses of [Woods'] name," and "was registered to a residential address as opposed to a business address."  *Id.* (citations omitted).

The Court is not persuaded. A consumer who maintains that an underlying debt was not his debt may "claim FDCPA protection by showing that the debt collector treated him as a 'consumer' allegedly owing a consumer debt," however, that plaintiff "*still must offer evidence to*

*establish that the debt was a consumer debt*." *Burton*, 934 F.3d at 580 (citation omitted) (emphasis added).  Woods has not done this.  In *Burton*, the Seventh Circuit affirmed a district court's grant of summary judgment for a group of defendants when the plaintiff "failed to put forward sufficient evidence to create a triable issue of material fact that the debt incurred on [a] Citibank account was consumer debt." *Id.* at 584. Specifically, the plaintiff in *Burton* submitted two relevant pieces of evidence that purportedly established that his debt was consumer in nature: "(1) his statements that, to the extent he was liable for the debt, it was a consumer debt" and (2) "the billing statements listing purchases made on the credit card for personal, family, or household purposes." *Id.* at 580. Woods' contentions are strikingly similar, proclaiming that the ticket's one-way status and the Account's registration to "an individual" and to "a residential address" conclusively render the debt consumer.  And for the same reasons as those in *Burton*, his claims fail too.

First, even when none of the transactions in *Burton*, "based on either the amount charged or the vendor, obviously signal that these were purchases made for a business purpose[,] . . . the billing statements shed no light on *why* these charges were incurred." *Id.* at 584 (emphasis added).  The same can be said for the airline ticket: though a one-way fare does not "obviously" track a business purpose, that purchase alone does "not provide enough information for a trier of fact to conclude [that it was] made for personal, family, or household purposes." *Id.*  Second, the Seventh Circuit rejected the argument forwarded by the plaintiff in *Burton* that the debt was predicated on personal, family, or household purposes because, "to the extent he was liable for the debt, it was a consumer debt." *Id.* at 580. Instead, that contention could not "be reconciled with his total disavowals" of the debt; the "bald assertion" was "hardly affirmative evidence that the debt was a consumer debt." *Id.* at 580–81. Again, the *Burton* plaintiff's contention corresponds to Woods' argument that the debt is consumer in nature because the Account was registered in his name and

at his former address.  That Woods would ostensibly embody a consumer—because his name and former residential address were used to establish the Account—is wholly unrelated to the underlying nature of the challenged purchase at hand, which must represent a transaction incurred for personal, family, or household purposes.

Under these circumstances, Woods "has failed to put forward sufficient evidence to create a triable issue of material fact that the debt incurred on the [ ] account was consumer debt." *Id.* at 584. Because Woods failed in shouldering his burden to establish that the underlying transaction was a consumer purchase, Defendants are entitled to summary judgment on his claims.  But even if Woods had established that the disputed debt was consumer in nature, his FDCPA claims would fail for the following reasons.

### 1.      Section 1692d: Continuing to report the debt

Section 1692d of the FDCPA bars a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Woods argues that he is entitled to judgment as a matter of law on his claim under this provision because "Defendants continued to report the alleged debt" even after he "disputed his debt with Resurgent on five separate occasions." (Filing No. 69 at 20.) In response, Defendants argue that "[h]arassment, oppression, or abuse, within the meaning of §1692d, does not occur where a collector merely reports a debt as disputed." (Filing No. 74 at 17.) Moreover, a separate section of the FDCPA "addresses credit reporting." *Id.* (citing 15 U.S.C. § 1692e(8), which, according to Defendants, "prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a dispute debt is disputed".  In any event, "at all times Resurgent reported the Account to the CRAs as 'disputed', which is consistent with the plain language of §1692e(8)." *Id.* (footnote and citation omitted).  Ultimately, because

"[t]he record is completely devoid of any evidence that Defendants engaged in any conduct, the natural consequence of which is to harass, oppress, or abuse [Woods], including any evidence that Defendants made any threats of violence or harm, use of profane language, or repeatedly called [Woods], . . . Defendants are entitled to judgment in their favor in relation to [Woods'] §1692d claim." *Id.*

The Court agrees with Defendants.  Although the specific types of prohibited conduct listed in Section 1692d are meant to serve merely as examples "[w]ithout limiting the general application" of the otherwise broad prohibition against harassment, oppression, and abuse, under the *ejudem generis* rule of statutory construction—that is, "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration," *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 129 (1991)— the nature of the enumerated conduct is instructive.  The Court rejects Woods' implication that continued reporting of the debt—even if he disputed it five times—is in any way like the use of "violence or other criminal means," "obscene or profane language," or repeatedly calling a person's home with the intent to harass them.  *See* 15 U.S.C. § 1692d(1), (2), (5).  Defendants, then, are entitled to judgment as a matter of law on this claim.  The Court **denies** Woods' Motion for Summary Judgment and **grants** Defendants' Cross-Motion for Summary Judgment as it pertains to his claim under Section 1692d.

**2.    Section 1692e(10): Using false or deceptive means to collect or attempt to collect the debt**

Section 1692(e)(10) of the FDCPA prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692(e)(10).  Woods maintains that he is entitled to judgment as a matter of law under this provision because "Defendants deceptively perpetuated the

false representation that [he] still owed the debt and continued to collect the debt despite receiving sufficient evidence that [he] does not owe the debt." (Filing No. 69 at 21 (citing *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895 (7th Cir. 2015) ("holding that a debt collector violated the FDCPA by failing to cease collection of the debt after [the consumer] disputed the debt.".) Specifically, Defendants requested that Woods "make a payment on the account" even after receiving his "FTC identity theft affidavit" and even after receiving his "filed police report." *Id.* Defendants argue that "[t]he record is clear that [they] did not ignore [Woods'] disputes," but instead "verified the Account and/or requested additional information necessary to investigate his identity theft claim" each time he "made a dispute." (Filing No. 74 at 18.) Moreover, "at all times that Resurgent reported the Account to the CRAs, the Account was marked as disputed." *Id.* And as soon as Defendants received the letter from "American Airlines stating that [Woods] was not responsible for the Account, the Account was closed, and Resurgent requested a tradeline deletion of the Account to the CRAs." *Id.* Moreover, though Woods argues that Defendants violated this provision by requesting that Woods "make a payment on the account after receiving [his] disputes[,] . . . [i]t is not necessarily a violation of the FDCPA to seek collection of a debt after a consumer disputes owing the debt." *Id.* Instead, "when a debt collector receives a dispute, the FDCPA triggers obligations upon a debt collector to verify the disputed account before continuing collection." (Filing No. 76 at 8 (citing *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010)).) "If the FDCPA were to work as" Woods wants, Defendants argue, "all collectors would have to permanently cease collection of accounts upon receipt of a consumer dispute, regardless of the validity of the dispute." *Id.* And the collection letters did not even attempt to collect on the debt; rather they "were merely informational letters" that provided "account information," which

explained that the information provided by Woods was "insufficient to support his claim," and instructed Woods "of the types of documents he can send in to substantiate" his dispute. *Id.* at 9.

Courts "evaluate § 1692e claims under the unsophisticated consumer standard and ask whether someone of modest education and limited commercial savvy would likely be deceived by the letter." *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 784 (7th Cir. 2020) (citation omitted). An unsophisticated consumer would not be deceived by the letters sent from Resurgent to Woods on May 1, 2019 and August 15, 2019. These letters—instead of demanding payment through deceptive or falsified methods—informed Woods "that the information [he] provided is insufficient to support the claim" he made about the disputed charge (*see* Filing No. 69-12 at 2; Filing No. 69-13 at 2). In fact, the letters provided additional means for Woods to supplement his challenge and invited his assistance in resolving the claim. *See id.* ("If further investigation is desired, please provide one or more of the following documents: . . ."). Though the back of the letters indicated that "[t]his is an attempt to collect a debt and any information obtained will be used for that purpose," *id.* at 3, a disclaimer identifying a communication as an attempt to collect a debt "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (citation omitted). All told, the letters did not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Defendants, then, are entitled to judgment as a matter of law on this claim. The Court **denies** Woods' Motion for Summary Judgment and **grants** Defendants' Cross-Motion for Summary Judgment as it pertains to his claim under Section 1692e(10).

### 3.   Section 1692g(a)(3): Continuing to assume validity of the debt

Section 1692g(a)(3) of the FDCPA "requires debt collectors to provide debtors with a written validation notice, informing debtors of their rights [ ], including the right to dispute the

validity of the debt within thirty days of receiving the notice.  After this thirty-day validation period expires, the debt collector may assume that the debt is valid." *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 415–16 (7th Cir. 2005).  Woods contends that because he "disputed the debt to Resurgent" twenty-one days after he "received Resurgent's first collection letter," Defendants could not continue to assume his "debt was valid."  (Filing No. 69 at 22.)  And despite Resurgent's internal policy of considering challenged accounts supplemented by an FTC identity theft report or a police report "'as fraudulent in the absence of any evidence to suggest the claim is bad faith,'" Defendants "merely assumed the debt belonged to [Woods] and disregarded the documentation provided to Defendants."  *Id.* (quoting Filing No. 69-6 at 24–25).  Defendants respond that "[n]ot only does [Woods] overlook the fact that the FTC dispute letter was deemed insufficient and the police report indicated that he provided two (2) letters from American Airlines confirming he owes the alleged debt, he completely overlooks what is actually contemplated by Section 1692g." (Filing No. 74 at 20.)  That is, this provision concerns "the accuracy of the collection notice, accurately conveying the information received from the creditor and providing the consumer notice that equips the consumer to evaluate the validity of the creditors [sic] claim." *Id.* Because "[t]he February 21, 2019 letter provided the requisite disclosure under Section 1692g(a)(3)", Defendants urge that "they are entitled to judgment as a matter of law in their favor." *Id.*

Section 1692g(a)(3) merely sets the parameters for providing consumers with adequate notice "that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Resurgent's February 21, 2019 letter did just that, stating, almost verbatim with the statutory command, that "[u]nless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid."  (Filing No. 74-1

at 68.) Defendants, then, are entitled to judgment as a matter of law on this claim. The Court **denies** Woods' Motion for Summary Judgment and **grants** Defendants' Cross-Motion for Summary Judgment as it pertains to his claim under Section 1692g(a)(3).

**4.    Section 1692f: Using unfair or unconscionable means to collect or attempt to collect the debt**

Section 1692f of the FDCPA bars debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Woods broadly proclaims that, looking at all the purported violations he advanced above, "there is no question as to whether Defendants used unfair or unconscionable means to collect [his] debt." (Filing No. 69 at 23.) Defendants respond that, "[w]hile section 1692f has sometimes been described as a 'catch-all' provision, it only applies to conduct that is 'unfair but is not specifically identified in any other section of the FDCPA.'" (Filing No. 74 at 20 (quoting *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 989 (W.D. Wis. 2015)). Because Woods' "Section 1692f claim is seeking relief for the same harm he alleges under" other provisions of the FDCPA, Defendants contend that he "cannot recover twice for the same conduct." *Id.* at 21 (citations omitted). In any event, even if alleging this as an independent claim were proper, Defendants argue that "the record is completely devoid of any evidence that Defendants' conduct was unfair or unconscionable." *Id.* And though Section 1692f's list of conduct is "not an exhaustive list," none of Defendants' alleged actions fall "within any of the unfair or unconscionable conduct that is set forth in Section 1692f." *Id.*

As Woods has premised his entire Section 1692f claim on underlying violations of other provisions of the FDCPA that the Court has already determined are unavailing—and provides no additional argument as to how this provision applies to his case—this contention necessarily fails. Defendants, then, are entitled to judgment as a matter of law on this claim. The Court **denies**

25

Woods' Motion for Summary Judgment and **grants** Defendants' Cross-Motion for Summary Judgment as it pertains to his claim under Section 1692f.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Woods' Motion for Summary Judgment (Filing No. 68) and **GRANTS** Defendants' Cross-Motion for Summary Judgment (Filing No. 73). Woods' claims are **dismissed**, and Final Judgment will issue under separate order.

**SO ORDERED.**

Date:  5/4/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jane Abaravich
AGRUSS LAW FIRM, LLC
Ravenswood Avenue, Suite 419
Chicago, Illinois 60640

Jane Claire Abaravich
AGRUSS LAW FIRM, LLC
jane@agrusslawfirm.com

Michael S. Agruss
AGRUSS LAW FIRM, LLC
michael@agrusslawfirm.com

Taylor L. Kosla
AGRUSS LAW FIRM, LLC
taylor@agrusslawfirm.com

Nicole Marie Strickler
MESSER STRICKLER, LTD.
nstrickler@messerstrickler.com

Stephanie A. Strickler
MESSER STRICKLER, LTD.
sstrickler@messerstrickler.com

---

[5] Woods also contends that he is entitled to recover actual and statutory damages as well as attorneys' fees and costs (*see* Filing No. 69 at 24–27). But as the Court has determined that no predicate violations of the FCRA or the FDCPA have occurred, it need not reach this contention.